May it please the Court, Counsel, Grant Eddy for Appellant Chery Gonzalez. I request to retain two minutes for rebuttal if needed. Your Honor, it is the Appellant's position that a combination of ruling errors at the trial court denied my client a proper trial and that requires reversal of the conviction. It was initially the prosecution's theory of the case apparently that when my client came to the border it was obvious that she knew that that methamphetamine was hidden in the vehicle because that vehicle could not even have driven all the way to Victorville where she said she was going. They changed their theory just before the trial. Why couldn't a vehicle get to Victorville? It's gone there six times in the last nine months. What was that, Your Honor? Why couldn't the vehicle get to Victorville? The initial theory was that that battery that was operating the vehicle would not have allowed the vehicle to go all the way to Victorville. That's a brand new theory. I didn't get that at all. I thought that the battery when inspected had been replaced, the normal battery, been replaced by a smaller battery in order to accommodate the methamphetamine which was hidden there. Yes, that is correct. They did a search of the car and they found the methamphetamine. Yes. What does this have to do with the ability of the car which had come from Victorville down to Mexico to get back? Yes. The theory initially, as I understood it from the prosecution, was that they were going to have an expert to testify that because of that small motorcycle battery it could not make it up to Victorville. Why is making it up to Victorville an element of the crime of importing methamphetamine into the United States? Well, the theory, as I understood it, was going to be that because my client was driving the vehicle and came to the border with a battery that could not allow the car to drive all the way to Victorville, that she would have had to have been told that the methamphetamine was in the vehicle and she would have had to stop before she goes to Victorville. And so that's why I had our expert Forrest Folk testify, and he did testify, that in fact the vehicle could make it up to Victorville. There was that testimony there. And that was to rebut the theory that in fact the client would have to have knowledge that that methamphetamine was hidden in the battery. And that was the whole question in the case. Did she have knowledge that the methamphetamine was hidden in that battery? Our witness's testimony indicated, yes, the vehicle could have made it all the way. However, there was cross-examination that brought out the fact that if there was some problem, that battery would not have allowed that vehicle to get all the way to Victorville. My point is, however, that the prosecution suddenly changed their theory of the case just before the trial and brought in the cell phone test information without a warrant. And while there was no pretrial motion to suppress that, it is correct that six days after the jury verdict, Riley did decide, the United States Supreme Court decided, you have to have a warrant for that. Well, counsel, does that case apply in the border context, Riley? I believe so, yes. Was that a border search case? No, but it was a blanket statement. You have to have the warrant before cell phone search. But would you agree that the jurisprudence regarding border searches is a little different? It's a different situation, yes. And warrants aren't required generally for searches at the border? Generally not, but Riley does indicate that it is required for searching of the cell phone data. Right, but do you think the same result would occur if the search is at a border of a cell phone? Because we have a case where a computer was searched at the border and no warrant was required. So why wouldn't that same rationale apply to a cell phone? Well, I don't know, but I believe that the Supreme Court's statement is what it is, and they might be willing to make a reversal of that based upon what you've just indicated, but that hasn't been done. So it was something that I believe the trial court should have granted my post-trial motion, judgment notwithstanding verdict, and set aside this, and we're asking you to do that. This was not a proper decision, conviction, and it should be reversed for that reason and all the other rulings that related to the issue of whether or not my client could basically come in and, for example, rebut that very damning cell phone information, and it was quite extensive. You had been alerted ahead of time that the cell phone information would be introduced at the trial, weren't you? Well, that could be stated, yes, I think so. We were alerted that it existed, but I did not know that it was going to be their primary theory of the prosecution. I thought, actually, that this vehicle could not make it all the way to Victorville, and that was the whole emphasis of all the discovery. What would that prove, that it couldn't make it to Victorville, that there was no intent for – I don't understand why that would be the government's primary theory, in your view. That that's the reason that there wasn't enough gas in it? No, because the battery that was in there, the little motorcycle battery, wouldn't allow the vehicle to be recharged, and ultimately, especially if you stopped once or twice, maybe for gas or a hamburger, that it wouldn't make it all the way. And my expert did testify and admitted that, in fact, if something happened like that, like a person stopped, they could not maybe make it all the way to Victorville. So that means that the person – go ahead. No, go ahead. That means, from the government's clear theory that I understood before this massive cell phone information came in, the government's theory would be this person, my client, would have had to have been told, don't stop the vehicle between now and the time you get to Victorville and you deliver the stuff, or wherever you stop, wherever it's going to be delivered. You had to – she had to have been told, don't stop, and that was the theory. So what did you think the purpose was for the government disclosing the cell phone records in discovery? What did you think that was for? Well, it was obviously a potential use for evidence, yes, and I was aware of that. With respect to the questions that Judge Rawlinson asked you about the difference, perhaps the inapplicability of Riley to this, I'd like to read you some language from Riley and see if it answers the question. In Riley, the warrantless cell phone searches could not be upheld under the exception to the warrant requirement for, quote, searches incident to arrest, unquote. Riley did not address border searches and expressly acknowledged that, quote, even though the search incident to arrest exception does not apply to cell phones, comma, other case-specific exceptions may still justify a warrantless search of a particular phone, unquote. So therefore, if they can search a phone in other circumstances without a warrant, isn't the well-acknowledged border search exception one of those, and therefore Riley does not apply? That could be, however, the Supreme Court didn't say that. What you're telling us is that maybe if the Supreme Court got another case involving an iPhone or a computer in a border search, they might follow Riley or they might not. That could be, however, I believe that the proper reading of it would be that they would. What portion of Riley gives you the intimation that the court would apply it to a border search? I don't believe they have any statement to that effect in there. But it is not just the cell phone information that was particularly harmful. It was the fact that, for example, they allowed the valuation evidence and that was the expert to testify about the valuation of the material. Was it methamphetamine? Yes. And what was wrong with that? Well, what was wrong with that is the obvious implication being my client is not an unknown courier. She's a person that had to have been told about the value. You're not going to have something of such terrific value given to somebody who doesn't even know it's in their vehicle. You're not going to entrust a very valuable item to someone who's ignorant about it. They might go to visit their Aunt Lucy in New Mexico and then all your valuable stuff is lost. Where's that in your brief? What? Where's that argument in your brief? Well, we indicate that my client – I didn't specifically say that in my brief. However, I believe it's an implication that the government was clearly having that as part of their theory at the time of trial. I'm simply saying in my brief that my client is entitled to know all the cases about unknown couriers. Now, that I have to say – the judge said that if you could tie the mechanic to an unknown courier case or try the person that supplied the car, but every case the judge seemed to think that it failed on the basis of materiality. How could you tie every case? What would be the value of having every unknown courier case? Well, in this case, it's not like every case. It's particularly concerned with knowledge. And in this particular case, I did raise the issue of valuation in our brief here. Did that answer your question, Your Honor? Yes, thank you. Counsel, you would agree that there was no timely motion to suppress the evidence from the cell phone. That is correct. Okay. And I believe my time is approximately up, but it was also very important for the court to focus on ruling that if my client basically testified, her prior conviction of Penal Code 530.5 would come in. And that was devastating because she needed to come in and testify as to all this cell phone information. But she was, in effect, precluded from doing that. When a defendant testifies, if there is a pertinent criminal conviction, the government is entitled to impeach with that under the law. Not all cases. I said if it's pertinent. Yes. And in this particular case, that particular conviction had to do with conviction of the use of, and the Penal Code does say, information that is for any unlawful purpose. It doesn't specifically have to do with lying. It was stolen ID. Yes. Stolen ID. If somebody steals an ID, it doesn't exactly indicate great belief in that person's character, does it? No. However, this particular Penal Code doesn't mention stolen identification specifically, and it doesn't say specifically what my client would have had to have done to have done that. It's simply the unauthorized use of another person's information, personal information, for any unlawful purpose. And the court assumed that had to do with what I believe Your Honor Wooden just indicated. And specifically, it involved my client's lying. And you'll see from the testimony or the quote of the court, she used the word lying, and that didn't indicate that. Did you preserve on appeal the question of whether or not letting this prior conviction in would be prejudicial? I did not use the word prejudicial. I thought it was fairly obvious, and I should have mentioned the word prejudicial. However, obviously, coming in would have been very devastating. All right. Thank you, counsel. Thank you. We'll give you one minute for rebuttal. We'll hear from the government. Thank you, Your Honors. May it please the court. Mark Pletcher for the United States. Your Honors, the appellant is correct. The one thing that this case was about was knowledge. And the evidence of defendant's knowledge of importing over three kilograms of methamphetamine was overwhelming.  She was the driver and sole occupant and registered owner of the Oldsmobile Aurora, which she had had for about six weeks. Under the rear seat, not in the trunk, not under the hood, but in the internal compartment of the car, was a battery that had been drastically altered. The factory battery had been removed, really hollowed out, and inside it put a really small motorcycle battery, as the pictures at supplemental excerpts of record 440 approximately show. So what would have been the evidence that the defendant knew that this has occurred? The evidence, as in each one of these cases, Judge Eaton, was circumstantial. But as the court said recently in Flores, the circumstantial evidence was overwhelming. First, the defendant lied at primary. She described to Officer Vargas a reason, her primary purpose of going to Mexico, which she later admitted to Agents Pham and Agent McKenzie was a lie. Then, to cover up that lie, she said she lied because she had been handcuffed at the time and was very nervous. She had not been handcuffed. Her lie pivoted. The text records, Your Honor, show a change of life pattern from approximately late December of 2012 until she was arrested on March 1st of 2013. And I don't understand why that is particularly evidence of knowledge. I mean, she didn't have a car before. Now she has a car. If you didn't have a car, you couldn't drive to Mexico. Now she has a car. She can drive to Mexico. I don't know that there was any record evidence that she did or did not have a car previously. She did not have this car previously. This is the car that she crossed in every week for five weeks until then on March 1st, 2013, she was stopped with methamphetamine. And then finally, Your Honor, the telecommunications data is strongly indicative of drug trafficking. Numerous calls immediately before, during, and immediately after she was detained by people with whom the relationship she could not explain and largely disavowed. They were the car repair people. Why just simply calling her to see if the car repair had been successful? I think that's not evident from the record, Your Honor. They don't appear to be car repair people. And take a look at the telecommunications record. I appreciate the spirit of the judge's question. Senny's hubby called 35 times that day after she had been detained. Eddie, co-worker, which the defendant admitted was not in fact a co-worker, had called her more than 10 times. In fact, Senny's hubby, recall, an individual with whom she had only met once and couldn't communicate because they didn't speak the same language, called eight times within the two hours after she had been detained. That is just the sheer telephone records. Take into account now the two text messages beseeching her to answer within one hour after she had been detained. Cher, where are you? Where are you? The evidence in this case is circumstantial, but it was unbelievably strong. Her uncorroborated story, the implausibility of her explanation coupled with her admitted lies add to that the value of the methamphetamine. And the position of the methamphetamine in the car made this case overwhelming. I lead with that because under either abuse of discretion review or plain error review, if the court were to find some error in the proceedings, and I think based on the very careful consideration of this case by the district court judge, the fact that the issues in this case were well crystallized and fully briefed below, I don't think the court will find error. But if you were to find error, the defendant can't meet her burden to show a likelihood that the result would have been changed. They certainly cannot show that any error affected substantial rights and can't show under plain error review, if any of those things were true, that these errors rose to a level of miscarriage of justice. Counsel, could we talk about the motion to suppress the evidence from the cell phone? Recognizing that the motion to suppress, that no timely motion to suppress was filed, do you think the Supreme Court's decision in Raleigh constituted an exceptional circumstance that would alleviate the burden to file a motion to suppress previously? It does not. Why not? For several reasons. One is that the Fourth Amendment didn't change because Raleigh came out. But really the answer comes back to Judge Bea's question, which is Raleigh itself internally exempts other exemptions, other exclusions from the Fourth Amendment, including the border search in this case. So Raleigh by its very terms didn't apply to this case. There's binding Ninth Circuit precedent, I think approximately on point. In this case, the cell phone was downloaded at the border in a non-forensic way. Was it incident to arrest? It was at the border. But was it incident to arrest? Was the cell phone downloaded in conjunction with her arrest? In conjunction with, but the term incident to arrest is a specific term of art that doesn't apply to this particular case. Why not? Because the search exception being relied upon and being relied upon in Cotterman is the border search exception. And so Cotterman, if the court finds, and I think the court need not reach this, should affirm this ruling on the narrowest ground possible. But if Cotterman were to apply, there's plenty of reasonable suspicion here. The defendant was the driver, registered owner, sole occupant of the car, had just been arrested and was being questioned for importing three kilograms of methamphetamine. That, I think, Your Honors, would be enough by itself. Cotterman involved a man who had a previous conviction for child molestation. Here there's no previous conviction for drug trafficking, is there? No, there's no previous conviction. And I think by reference to the other district court cases that have started to come out post-Riley, the court will see that this one falls nicely in line with those cases. Sabinucci, Hatawari, I think, Melendez from our southern district of California. But, Your Honor, the plus factor, if the court needs one in this case, is that during the post-arrest interview the cell phone was ringing incessantly, including one call noted by the agents coming in from this woman identified as Sabinucci. But if the phone was not seized permissibly, it wouldn't matter what happened post-arrest, would it? That's right, Your Honor. But the phone was not seized. There's a difference between search and seizure, I think, is the distinction Your Honor is making. Certainly at the border, an instant to arrest, her personal property can be detained and inventoried. The search of it then is proper, given the search at the border, just as in Cotterman. Are you familiar with our case in 2013, United States v. Camus, C-A-M-O-U? I'm not sure that I am, Your Honor. Because it appears that in that case we said that a cell phone search by Border Patrol agents was not incident to arrest unless it were spatially and temporally incident to the arrest or close to the arrest. What do you think about that language? Well, without knowing the exact facts of the case, but the ones that you've given me, the search by Border Patrol is probably well within the United States and not at the international border. It probably doesn't implicate the border search exception. So truly they were within the bounds of Riley as a search incident to arrest. That would be my supposition from the facts that I've been given as to that case. Here, the border search. Well, it has to be lit. If it's a search incident to arrest, the item that's discovered has to be within the immediate control. So if the person has already been handcuffed and the cell phone is in the trunk of the car, that would not necessarily be incident to arrest. That's why I was asking you about that case, whether or not you're aware of that case and the requirements for a search of a cell phone to be incident to arrest. Based on those facts, it sounds like that case was rightly decided and it's really a case about proximity. Here, the cell phone is one that the defendant had on her. But again, the fact that her personal property was taken and inventoried incident to arrest remains permissible, even under Riley. It's the search of the phone thereafter that's the question, and that was done in this case pursuant to the border search exception, whether that's a border search exception ab initio or whether that's a border search exception layered with the reasonable suspicion standard in Cotterman. Either way, whatever the court determines in that regard, it was permissible, though. So your position is that the initial seizure of the phone was for purposes of inventory? Is that what your argument is? I think that it is multiple things. The seizure of the phone at the border is also, or the detention of the phone pursuant to the border search exception is also permissible. Both things would be proper. And are you saying that both occurred in this particular case? Yes. So your position is that the phone was inventoried as part of the border detention? What is your inventory? What part did the inventory play in her detention? At what point was the phone taken for inventory purposes? After she was arrested. Your Honor, this is an issue that isn't raised on appeal. I understand, but I'm trying to have my questions answered. Whether it was raised or not, it's a legal issue. So I'm asking you, at what point was the phone inventoried as part of the border protection proceedings? I believe it was written down on a search inventory post-interview. I believe. Again, there's no record evidence on this issue specifically. So that would not have occurred prior to seizure of the phone then? I mean, if it's post-arrest, it couldn't be part of the preliminary proceedings, right? Your Honor, I don't want to get overextended on the exact timing of the inventorying of the phone. I'm not sure exactly when arrest took place as compared to inventory of the phone. Well, you're the one who said it was part of an inventory. It was. That's why I pursued that with you as to when exactly did the inventory occur. It was written down on an evidence inventory after the defendant had been arrested and questioned. I think, like all property that is inventoried. But again, the issue is waived. If the court finds good cause to consider this issue, which it shouldn't, the ground upon which the parties briefed and the government relies is that the search was, both the seizure of the phone and the search of the phone were permissible because of the border search exception and reasonable suspicion as necessary. All right. Thank you, counsel. Thank you. Rebuttal. Rebuttal. If, in fact, there was the search and seizure of that cell phone initially at the time of the arrest, that should have been made known to counsel for the defense immediately upon the discovery, not at a later time as was done in this case. It should have been done initially rather than having the initial theory of the defense. The car couldn't make it all the way to Victorville. That cell phone information, if it was obtained at the border and searched and seized and obtained should have been made immediately available to the defense on discovery. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Eaton